IN THE DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NWB DISTRIBUTION, L.P. and NUWAVE BOTANICALS, LLC, *Plaintiffs* | § § § § | |
| v. | § § | CIVIL ACTION No.: 4:24-cv-01695 |
| ALEC J. DONN, VINE & CO, LLC, and VINE&CO, LLC *Defendant* | § § § § | |

**PLAINTIFFS' FIRST AMENDED VERIFIED COMPLAINT AND APPLICATION FOR AN EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

Plaintiffs, NWB Distribution, L.P. and NuWave Botanicals, LLC sue Defendant, Alec J. Donn, Vine & CO, LLC and Vine&Co, LLC and alleges:

## I.    JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a) as to claims asserted under the Lanham Act, 15 U.S.C. § 1051, et seq. This Court also has original jurisdiction over the claim of unfair competition pursuant to 28 U.S.C. § 1338(b).

2.    This Court has original subject matter jurisdiction as to the claims other than those based on the Lanham Act, under 28 U.S.C. § 1367, because those claims are so related to the claims brought under the Lanham Act that they form a part of the same case or controversy.

3.    Further, an actual justiciable controversy now exists between the parties, and the requested relief is proper under 28 U.S.C §§ 2201-2202.

4.    Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the defendant is subject to the court's jurisdiction with respect to this action in this district.

## II.    PARTIES

5.      Plaintiff, NWB Distribution, L.P. ("NWB"), is a Texas limited partnership, having its principal place of business in Harris County, Texas.

6.      Plaintiff, NuWave Botanicals, LLC is a Texas limited liability company, having its principal place of business in Harris County, Texas.

7.      Defendant, Alec Donn, is an individual who resides at 2490 S. Loop 336 W, Apt 2541, Conroe, Texas 77304.

8.      Defendant Vine & Co, LLC is a Texas limited liability company whose registered address is 2490 S Loop 336 W, Apt. 2541, Conroe, Texas 77304-3742.

9.      Defendants Vine&Co, LLC is an Idaho limited liability company with its registered address at 2278 E Walling Drive, Boise, ID 83712-8468 but who also may be served by serving its sole manager Alec Donn wherever he may be found.

10.     At all times complained of, Defendant Alec Donn ("Donn") is the beneficial owner and manager of the two corporate defendants in this case and primarily resides in the State of Texas. At all times relevant herein, Vine&Co, LLC and Vine & Co, LLC were completely controlled by Donn, who acted at his behest to accomplish the causes of action set forth herein. Donn has formulated, directed, controlled, had the authority to control the corporate entities, and they participated in the acts and practices of Donn as described herein that constitute a joint and/or common enterprise and/or Conspiracy. There is also such a unity of interest between Donn and Vine&Co, LLC and Vine & Co, LLC, that they are an alter ego of these sham companies. All the above-described companies are dominated and controlled by Donn directly or through others he directly controls that have been involved in the schemes described hereinbelow. Both Vine&CO, LLC and Vine & Co, LLC were created to facilitate Donn's deceptive, fraudulent and unlawful

activities described herein.

### III.   <u>INTRODUCTION</u>

11.     Over the last twenty months, Defendant Donn, using his two Defendant LLCs, brazenly embezzled at least $940,659.66 worth of profits from NWB while employed as its Sales Director. Donn ran a theft ring inside of NWB's own warehouse to supply his alter ego companies Vine&Co, LLC and Vine & Co, LLC with stolen goods to sell to their customers. Donn secretly initiated shipments of NWB's inventory to unwitting NWB customers who thought they were purchasing products from NWB, while redirecting their payments for the products into his personal bank account in Idaho, which he falsely represented was a bank account for Vine & Co, LLC. His embezzling methods, as discussed below, were based on his position of trust at NWB and his knowledge of NWB's computer systems and shipping department.

12.     Over the last twenty months, Donn used his access to NWB products to form the basis of a new venture wherein he claimed he was part owner of NWB as he hired six people to help sell the stolen products. *See* **Exhibit C**.

13.     To add insult to injury, after NWB discovered the theft and terminated Donn's employment, Donn continued to hold himself out as a shareholding partner at NWB, displaying NWB's subsidiary's "EXP" trademarks on his email signature block when he and his two co-defendant companies sent invoices or price sheets or other correspondence to NWB's customers (in violation of the Lanham Act) as they tried to continue to sell them products that Donn stole from NWB. The subsidiary that owns the trademarks misappropriated by Defendants is Plaintiff NuWave Botanicals, LLC (hereinafter "NuWave").

14.     In further violation of federal law, Donn is also using NWB's proprietary and trade secret customer list to continue to misdirect business from NWB's customers to his co-defendant entities

as of the date of this filing. Two of NWB's customers recenlty forwarded emails from Donn to the Plaintiff showing the Defendants' continued use of the marks which are attached hereto as **Exhibit D & F**.

## IV.    FACTS

### A.    The NuWave Trademarks & NWB Distribution Trade Secrets

15.    NWB is a direct distributor of beverages, soft drinks, all natural herbal goods, and other, related products to mid-sized merchants and convenience stores, such as Circle K. It also sells its products directly to the public. NWB has its warehouses, sales offices, laboratories, manufacturing facilities, and shipping zone all located in the same campus in north Houston, Texas. NWB has been in business since 2016 under various predecessor entities and owns NuWave Botanicals, LLC, its marketing company.

16.    Through the expenditure of time, skill, effort, and money, NuWave developed the "EXP" Marks, which have been registered and used NuWave in the development, organization, and operation of NWB's system of distributing beverages, soft drinks, all natural herbal goods, and other, related products to large and mid-sized merchants for resale, all under the label of the "EXP" Marks, NuWave markets.

17.    NWB and NuWave have developed the EXP Marks for use in the operation of their business, which includes the following principal trademarks, which has been registered by NuWave on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| MARK | Registration No. | Registration Date |
|---|---|---|
| EXP | 90529275 | September 28, 2021 |
| Experience Botanicals | 90363337 | September 28, 2021 |
| $E^2$ EXP Kratom | 6338402 | May 4, 2021 |

18.     The foregoing registrations are valid, subsisting, in full force and effect, and cover the goods and services identified in the registration certificates. The registration is incontestable under the Lanham Act, 15 U.S.C. § 1065. A copy of the certificates of registration are attached hereto as **Exhibit A**.

19.     The EXP Marks have been used exclusively by NWB and NuWave, and its designated licensees, in commerce in connection with the operation of NWB's business since May 4, 2021. Since that time, NWB and NuWave has grown their distribution network nationwide.

20.     The EXP Marks have become a valuable asset of substantial and inestimable worth to NWB and NuWave. The EXP Marks are a symbol of extremely high-quality products, and timely service & delivery of the same. NWB and NuWave have a vital economic interest in protecting the EXP Marks. The preservation and protection of its name and the EXP Marks is essential for the maintenance of the goodwill and reputation associated with them.

21.     Since 2016, NWB and its predecessors and subsidiaries have also built and grown an extensive and proprietary customer list, which is kept secret from the public. As NWB entered into agreements for the distribution of its EXP products at various locations throughout the United States, its customer list grew considerably.  And the list is not just a list; the customer list includes *all* transactional information about each of NWB's customers since 2016, including their purchase cycles, amounts, and preferences, as well as their contact information and location, among other personal facts. The customer list is a valuable asset of substantial and inestimable worth to NWB.

22.     NWB goes to great lengths to keep their trade secret and proprietary customer information secret and out of the hands of general public.

### B.  NWB HIRED ALEC DONN TO LEAD ITS SALES DEPARTMENT

DocuSign Envelope ID: 40D77795-301A-453E-89C3-DEE7A82B8ED6

23.     After NWB's former Sales Director resigned, Alec Donn (then an employee at another company in Idaho called "Drip Drop Distributors") learned that NWB was looking for a new sales director in Houston.

24.     On or around August 25, 2022, Donn suggested he could be the next sales director for NWB, as well as its business-to-business ("B2B") brand "EXP".[1] He agreed to come to Houston, Texas to NWB's facilities to meet NWB's staff and to take a tour of the various offices and warehousing. On or around September 9, 2022, NWB booked a flight for Donn to come to Houston Texas to visit the facility and meet our team to see if he was a good fit.

25.     During Donn's visit, he agreed to take the position as Sales Director. NWB set up a company email for Donn's use under NWB's domain on September 12, 2022.

### C.  DONN IMMEDIATELY MADE CHANGES

26.     Immediately after hiring him, he began setting up new pricing sheets for all of NWB's products and requested a new sales website for B2B customers be built under a new platform NWB was unfamiliar with called "BigCommerce." This was despite the fact that NWB already had a website for sales customers that could be easily expanded for business customers.

27.     Donn assured NWB that he would be able to build the new website to do what NWB was familiar with, but insisted NWB use his system because he was more familiar with its use.

28.     After discussion, NWB agreed to his new system and paid for building and hosting of the new website on one of NWB's domains.

---

[1] NWB has a business-to-consumers branch ("B2C"), and its business-to-business branch ("B2B") called "EXP" which distributes consumer products to other businesses in volume, while advertising them through its marketing company NuWave.

29.     On or around November 9, 2022, the new sales site was up and running. NWB's in-house design team created the graphics for the website, while NWB linked its credit card processing accounts and all of its customer and shipping accounts to the website.

30.     By December 17, 2022, Donn knew all the products, dimensions, SKU's & weights of all the products NWB sold.

31.     Around the same time, Donn suggested NWB should partner with Donn in a new project he was working on called "Vine Collective." Vine Collective sold mushroom and hemp products in Idaho, most of which were illegal to sell in Texas.

32.     Donn offered to give NWB shares in this new company in exchange for placement of Vine Collective products on NWB's websites. NWB rejected Donn's offer, and also instructed Donn that he must run his private business in his own private time. NWB further instructed Donn to ensure that his side-business would not interfere with his ability to do his job as a sales director for NWB. Donn agreed and assured NWB he would keep Vine Collective separate from his work at NWB.

33.     On or around January 16, 2023, Donn suggested that NWB create EXP email addresses for everyone on the B2B sales team. This would separate the cards and email addresses given to the B2C customers from the B2B customers to avoid any confusion over which type of customer they were. NWB approved of the change and directed its in-house graphic designer to create the new business cards.

34.     Unknown to NWB management, Donn had the graphic designer include his side-business' name, "Vine Collective," on the bottom of his NWB business card, lying to the graphic designer that he had agreement with NWB to do so. Donn used the cards for several months while telling NWB customers Vine Collective and NWB were newly partnered entities.

35.     On January 17, 2023, Donn mentioned he wanted to "clean house" in his new department and terminate several of the legacy sales team members that were NWB employees for many years. Donn claimed it would save money to streamline the sales department.

36.     On January 26, 2023, Donn followed through with his idea, effectively eliminating all of the other NWB employees that had administrative access to the backend of the new sales system he recently had NWB construct. Donn said he operated better alone, only needing two assistants to deal with customer requests. Accordingly, NWB provided him with two assistants.

37.     On March 20, 2023, NWB paid for Donn's move to a new residence in the Houston area so he could build up the sales department and develop the sales systems in the Houston office.

38.     On December 11, 2023, one of NWB's office managers discovered Donn changed his number in the business telephone system so that calls to the sales department went to a cell phone number in California that was only accessible by him. When confronted by the CEO, who told him he had to take all sales calls to the office phones so someone else could handle the sale if he was out, Donn claimed someone else at NWB must have changed it. The number was changed back to the office.

39.     After completing an internal audit of the calls received to Donn's private California number, NWB found that Donn took several sales calls a week in that manner, circumventing NWB completely.

40.     On or about February 8, 2024, NWB paid airfare/hotel/expenses for Donn to attend the "Champs Trade Show" in Las Vegas, Nevada. Donn was introduced to NWB's customers at the trade show as its new Sales Director. During the trade show, other attendees noticed Donn using the "EXP" business card with "Vine Collective" printed on the under EXP. Again, the CEO of NWB told Donn that NWB never authorized him to put another business name on the company

cards. The CEO also told Donn to replace the unauthorized cards immediately after the trade show with cards that only included NWB's "EXP" brand.

### D. **DONN'S SALES BECAME SUSPICIOUS**

41.     After Donn worked as Sales Manager for NWB for a year, NWB's CPA performed an audit on the new sales system Donn was managing. The CPA noticed that Donn had been invoicing customers for amounts that were below NWB's cost on almost every order he managed for large business purchases.

42.     When NWB's accountants noticed there were missing proceeds from the sales Donn claimed to have made, he denied them full access to the BigCommerce platform and sent them reports that made no sense, mathematically. When asked to give them full access, he would promise to walk them through it, but never did so.

43.     After discovering the pricing issues, the CEO met with Donn to reiterate that NWB could not sell below the prices it pays for products, and reiterated NWB's process for pricing for each customer. Donn told the CEO that some of the sales were made in error, while other sales were priced low as part of a promotional plan he was developing.

44.     As an example of one of the underpriced sales, Donn appeared to sell several products below NWB's cost on a February 11, 2023 sale to Discount Wholesale. NWB's cost for the products on that invoice were over $14,000.00 with an MSRP of approximately $28,000.00, yet Donn only invoiced the buyer $14,000.00. Thus, that single transaction cost NWB the amount of the expected profit of $14,000.00, plus the amount of NWB's actual cost for the product, plus the 3% credit card processing fee that came out of the funds NWB received.

45.     After the conversation about pricing, NWB was forced to cancel several of these underpriced sales and refund payments. The CEO told Donn to get all the pricing corrected before

he makes any further offers to sell to any customers. The CEO also demanded the login-in information for the new sales system <u>because the one Donn gave him did not work</u>.

46.    On May 20, 2023, Donn gave the CEO the real login password: **EXPVine**. Donn also sent the CEO the URL for the new sales system: **expvine.zendesk.com**. When asked why they both had the trademark "EXP" next to Donn's "Vine" logo, <u>Donn explained that he put his "Vine Collective" business name next to NWB's trademark because he created NWB's system from an old version for his business he previously created, so he just added EXP to it.</u>[2]

47.    As a result, NWB discovered the word "Vine" was attached to the URL connected to the customer relationship management system and <u>the logo for Vine Collective was seen next to NWB's trademark "EXP" by NWB customers *every time they made and order from NWB.*</u> It was also later discovered that <u>Donn was telling every customer that made a purchase that NWB and Vine Collective were 50/50 partners, so payments to Vine Collective were just as good as payments to NWB</u>.

48.    On March 1, 2024, Donn suddenly announced to NWB management that he intended to leave the company to shift his focus to his other business, Vine Collective, since he was allegedly "making a lot of money from it."  He said that he was willing to transition to a consulting position to finish building-out NWB's sales team, remotely, for $48,000 a year.  This was after he had terminated many of our previous sales people, and caused several others to leave.

### E.  DONN'S THEFT WAS FULLY DISCOVERED

49.    On March 6, 2024, while Donn was out of the office, NWB received a call from one of its customers, McDonald, who threatened to sue NWB if his $4,305.00 payment was not refunded on an order he had made three weeks earlier that never arrived. NWB asked McDonald to send us the

---

[2] This was untrue because NWB paid for the creation of the system using its business credit card, after Donn became an employee.

invoice that he received, because none was showing up in NWB's system. Unbelievably, the invoice McDonald sent back was made out to "Vine Collective," Donn's personal company he ran on the side. McDonald also sent us his payment confirmation showing that his money was paid to "Vine Collective" on February 16, 2024.

50.     NWB realized Donn was running his own distribution company using NWB's products. He was paying for products near cost, then invoicing the customers the MSRP, which is normally around double the cost. Donn was making *a lot* of money.

51.     On March 9, 2024, NWB undertook a two-day review of all NWB invoices and discovered numerous other instances of theft where he made it appear he sold products to customers at cost. The total amount of the uncollected profit discovered during the initial audit on May 9, 2024 was **$338,796.92**.

52.     The audit revealed in detail how Donn's so-called "pricing errors" were actually Donn's main method of running his own secret, illegal distribution business from inside NWB's facilities, using NWB's products to make one hundred percent profit on every "sale" he made to unwitting NWB customers. The audit also revealed that Donn was billing NWB customers using invoices he created outside of NWB's system that directed NWB's customers to make their payment (meant for NWB) to his personal bank account in Idaho.

53.     On March 10, 2024, NWB disabled Donn's access to the entire invoicing and inventory system. It also deactivated Donn's email account. When NWB attempted to recover NWB's CRM system that keeps all the names and details of NWB's customers (the "customer list"), it was discovered Donn had revoked everyone else's access.

54.     On March 11, 2024, NWB employees were able to regain access to its customer list by contacting Zendesk's corporate support and providing proof of ownership of the files.

DocuSign Envelope ID: 40D77795-301A-452F-89C3-D5E7A82B8FD6

55.     After seizing Donn's computer that same day, more of Donn's much wider operation was discovered. The computer files further confirmed that Donn had a secret sales team outside of the company, whose contact information Donn gave to NWB customers who intended to make purchases from NWB and/or EXP. Donn was slowly transitioning NWB customers to his own distribution companies Vine & CO, LLC (Texas) and VINE&CO, LLC (Idaho).

56.     Over that weekend, NWB's attorney drew up the termination papers for serving on Donn that following Monday. When Donn arrived March 11, 2024, he was presented with the termination documents that set forth the extensive theft uncovered. The Termination Notice is attached as Exhibit E.

57.     After a more thorough audit of NWB files during the still-pending police investigation, NWB discovered Donn sold **$940,659.66** worth of products using approximately sixty phony sales to NWB customers using his own credit card, along with a number of other methods.

## F.  **DONN'S EMBEZZLEMENT METHODS**

*Manual Falsification of Invoices*

58.     First, most of Donn's theft was made possible because of a "manual confirmation of sale" bridge between the customer invoicing system that he built in "BigCommerce," and NWB's current invoicing/shipping system that it uses called "Fishbowl." Each time he initiated a sale from the warehouse, he entered numerous, manual confirmations that sales had been paid in full, even though they had not. He was able to mark those invoices "paid" by secretly paying some small dollar amount using his personal credit card, while simultaneously falsely entering the customer's name as the owner of the credit card. This got the shipping process started. Then when the products shipped to the customer, he included an invoice with his Vine Collective logo next to the EXP trademark, with payment links to his personal bank account in Idaho.

59.     The most recent audit also uncovered Donn used *his personal credit card* to start the shipment process on at least sixty shipments, but he tried to cover it up. Each purchase indicated the NWB customer's name next to Donn's credit card number—with Donn's billing zip code swapped out of the Customers' addresses so the initial small payment would be accepted by the payment processor's system.

60.     This system netted him, Vine & Co, LLC and Vine&Co, LLC the entire profit NWB would have made at MSRP, and left NWB with an actual loss on each transaction because the initiating payment never covered the cost of the products sold.

61.     Donn also ran the same scheme using *his personal checks* when he couldn't use his credit card. The following are a few examples of his transactions:

- Donn paid NWB $8,786.00 with his personal credit card after he generated a fake invoice number SNWB-4829 to a customer named Ambedo Naturals, allegedly for $9,761.00 worth of products. Donn then had the shipping department ship $75,723.50 worth of products to Ambedo while he secretly invoicing them using a Vine Collective invoice. This was a loss of $65,962.50 to NWB, while the profit to Donn could be as high as $100,000.00 on this single transaction.

- For Order 1214 to Mak Enterprise Group, the invoice says $1,560.00, for $2,598.96 worth of products. This invoice was marked paid, by Alec Donn, for which he paid NWB $390.00. This was a loss of $2,208.96.

- For Order 1262 for Inland Botanicals, Donn removed back-stocked products from NWB's warehouse that merely *appeared* to be what Inland ordered. He knew it would be a while before anyone noticed it was missing. Donn then reprinted labels from his home on an inkjet printer, so the products label matched what Inland ordered. He then charged the customer $3,115.00 for the fake products using his own bank account.

- On December 6, 2023, our customer Optima ordered a large amount of product. It was packed and delivered to them by our shipping team. The customer was then invoiced by Vine Collective for $10,500.00 on October 3, 2023, $11,050.00 on December 6, 2023, and $11,050.00. There were also charges for $9,800.00, $10,969.62. This was a theft of $53,369.62.

- Order SB2B-824 showed our customer was shipped $9,800.00 worth of products at NWB's cost but was invoiced by Vine Collective for $10,969.62. The invoice was marked paid in our system but was delivered to the customer. This was a total loss to NWB of $9,800.00.

62.     NWB has discovered a hundred other similar transactions. There are still over a thousand remaining invoices under investigation. A spreadsheet of the faked purchases discovered so far is attached as Exhibit B.

### *White Rabbit Scheme*

63.     NWB also has a "drop shipping" business. It allows other businesses to sell products on their own websites that are shipped to the customers directly from NWB's warehouse or a warehouse of NWB's choosing. NWB ships seltzer waters and branded refrigerators to convenience stores in this manner.

64.     Donn was placing orders on one of NWB's customers' websites for shipment from NWB, *using NWB's business credit card*. This resulted in NWB's warehouse shipping products directly to Donn's customers at Vine & CO, LLC and Vine&Co, LLC, but purchased by NWB, whom he then invoiced using his EXP/Vine Collective branded invoices.

65.     NWB has discovered at least ten of these transactions so far. The largest transaction of this type was invoiced at $24,000.00 plus the value of the product shipped for free from NWB's warehouse.  That customer confirmed that she made her payments to Donn at Vine Collective.

### *Donn Misrepresentations*

66.     Of the customers NWB has been able to confer with about this situation, most have sent their proof of payments via wire transfer to "EXP/Vine Collective." They all confirmed they believed they were paying NWB when they paid Vine Collective (Donn's brand name for the distribution company he runs through Vine & CO, LLC and Vine&Co, LLC) because of the way the EXP logo was being used, and because Donn was a sales manager for NWB. The confusion was escalated by Donn by putting both "EXP" and "Vine Collective" on customer facing websites he created.

67.    Donn also told each of them that he was a shareholder of EXP and NWB and that he was NWB's partner.

*Credit Card Fraud*

68.    Incredibly, over the past few days, Donn has continued attempting to charge NWB's company credit card for thousands of dollars for personal use such as food delivery.

*Trade-Show Theft*

69.    Lastly, Donn took $32,363.44 worth of products (at NWB's cost) for use at trade shows as an EXP spokesman in January of 2024. None of it was returned to NWB, nor used at any tradeshows for NWB.

70.    Upon information and belief, Donn took approximately $100,000.00 worth of products to start up his new venture.

### G.  DONN'S ACTIONS AFTER TERMINATION

71.    Since his termination, Donn stopped communicating with NWB and blocked the officers of NWB on his social media. He has continued contacting NWB's suppliers to get them to cancel their contracts with NWB and sell directly to him to bypass NWB. He is also contacting NWB customers using NWB's trade secret and proprietary customer list to try to get them to wire him more money. He is also contacting NWB customers to continue to solicit them.

72.    On April 30, 2024, NWB received an envelope with two checks for a total of $1,700.00, with a notation that if the checks were cashed, it would settle all matters between NWB and Donn.

73.    On May 1, 2024, Donn sent an email to one of NWB's customers using the customer list he stole. The email was from Donn and the Vine Collective Defendants (the brand used by both Vine & CO, LLC and Vine&Co, LLC) & EXP. *The signature block on this email still included*

DocuSign Envelope ID: 40D77795-301A-452F-89C3-D5E7A82B8FD6

_both the "Vine Collective" logo, as well as NuWave's trademark EXP_, similarly to how Defendants have been confusing NWB's customers for the last twenty months as shown below:



### H. DONN'S USE OF THE EXP TRADEMARK NEXT TO THE VINE LOGO CAUSES CUSTOMER CONFUSION ON PURPOSE

74.   To the general public, Donn's use of the EXP trademark next to Vine&CO, LLC and Vine & CO, LLC's Vine logo, makes it appear as if he and his two companies are in a partnership with NWB and NuWave. The confusion was and still is their intent because Donn actually represented himself as a part-owner of NWB to NWB's customers. It allowed Donn to redirect funds to himself and to Vine&CO, LLC and Vine & Co., LLC, which were meant for NWB while Donn worked for NWB. It is still allowing Defendants to send emails to NWB customers (using the stolen customer list) while appearing to have NuWave and NWB's authority to discuss NuWave and NWB's business and to suggest the customer move their business over to his full-time.

75.   The Defendants' theft-business model included theft of NWB's products for sending to Vine Collective customers under the guise of Donn's partnership with NWB. Indeed, Donn invented (and told NWB customers about) an entirely imaginary partnership wherein Donn owned shares in both Vine Collective and NWB, and was authorized to hire employees to sell NWB

products under his Vine Collective companies.  He and his two companies actually hired six people as part of this imaginary partnership, who each believed they were working for NuWave and NWB and Vine Collective. Donn also pretending he controlled the graphic department at NWB and NuWave, while also pretending his Vine Collective companies owned the inventory of NWB. Donn also sent text images of the inside of the NWB warehouse to people he hired as proof that they were working for a reputable well-stocked company. Most of the sales made through Defendants' Vine Collective compnaies were not handled in a timely manner because Donn could not get the stolen NWB merchandise shipped fast enough. As a result, many of the customers who were taken in by Donn's use of NWB's marks while the entity Defendants sold them stolen products have vowed never to do business with NWB again.

76.    One of the people Donn hired to work for him as a "partner" of NWB, Dave Friesen, believed he was working for NWB *and* Vine Collective when he took the job. *See* **Exhibit C**. Friesen turned over a list to NWB of the sixteen customers he sold NWB products to (believing he was an NWB contractor) but which sales were actually for the benefit of Vine & CO, LLC, Vine&Co, LLC and Alec Donn. The list of the charges Donn directed Friesen to make is attached to the Declaration of Friesen attached as **Exhibit C**. Friesen made a total of sixteen sales, where nine of the sales were never fulfilled because Donn could not steal the products from NWB's warehouse fast enough. Friesen also turned over the price list Donn gave him, including EXP products, for Friesen to use in his job for Vine Collective. Friesen also turned over the ACH form he was directed to give to his customers, which displays the EXP trademark prominently on the top of the page. **Exhibit C**.

77.    The recent email Donn and his companies sent to one of the customers from NWB's customer list, to try to get the customer to move their business to his so-defendant companies, still

includes the EXP logo in the signature. **Exhibit D**. Indeed, Donn is communicating with all of NWB's customers with the same signature block. **Exhibit F**.

78.      As of the date of this filing, Defendants are clearly intending to continue using the NuWave Mark and the NWB customer list, in violation of federal law. NWB and NuWave have, and will continue to lose, business, goodwill, and customers if Defendant Donn, in conspiracy with Vine & Co, LLC and Vine&CO, LLC, continues to infringe on Plaintiff's Marks and use Plaintiff's confidential customer lists. Further, due to Defendants' use of NuWave marks, both Plaintiffs have lost the power to control their reputation and place in the market. Plaintiffs have also suffered losses to their reputation and goodwill that cannot be quantified. Thus, the damage to NWB and NuWave cannot not be undone by monetary remedies.

79.      Additionally, as this is an exceptional case of trademark infringement based upon Defendant's deliberate, willful, and bad faith acts of infringement, Plaintiff NuWave is also entitled to recover its attorneys fees under 15 U.S.C. § 1117(a).

### I.   CONSPIRACY

80.      Each of the actions taken by Alec Donn complained of herein were taken in furtherance of a conspiracy to quickly, and illegally grow his two businesses, Vine & CO, LLC and Vine&Co, LLC (hereinafter "the Vine Collective Defendants"), both of which operated under the name Vine Collective. At all times complained of, Donn used his connection at NWB to deliver stolen goods (in all the ways described above) to Vine & Co, LLC and Vine&Co, LLC for distribution to customers who either thought they were paying NWB, or thought they were paying a partnership that did not exist. The various methods of theft and misappropriations Donn committed, as set forth herein, were merely means to supply and support his Vine Collective Defendants financially, which they in turn supported him financially.

81.    Since this case was filed, investigators have subpoenaed, located, and traced NWB's stolen and misappropriated funds in Defendant Donn's Idaho Credit Union bank account. The source of the funds were from NWB customers that unknowingly made payments into an account outside of NWB's organization—accounts controlled and owned by the Defendants. Many of the payments coming into the Idaho Credit Union matched exactly the invoiced amounts and invoice numbers in NWB's system that were underpaid or left unpaid altogether while products went missing. Likewise, much of that money was wired out of the Idaho Credit Union Account to a business account used by Vine & Co, LLC and Vine&CO, LLC, as well a personal account used by Donn.

82.    As such, all three defendants are in conspiracy with one another. Defendant Donn misappropriated the products, funds, and trademarks, before he was terminated by NWB. The Vine Collective Defendants both utilized the trademarks in their commercial correspondence to NWB customers. Then all three Defendants took, concealed and used the stolen, misdirected, and misappropriated funds that ultimately made it into their banks in Idaho. All three Defendants also gained customers from NWB as a result of their conspiracy to misuse the EXP trademarks.

## V.    CAUSES OF ACTION

### COUNT I:
### TRADEMARK INFRINGEMENT, UNFAIR COMPETITION,
### AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a) and Common Law)

83.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 82 hereof.

84.    NWB and NuWave have spent substantial sums to promote, and have generated substantial revenue and recognition from, the EXP Marks, which are distinctive.

85.    The distinctive EXP Marks have become impressed upon the minds of the trade and public in identifying NWB and NuWave products and services, as part of a national distribution network, and consumers understand the marks and logos to indicate the source or origin of such products

and services provided in connection with NWB and NuWave's reputation for quality.

86.     NWB and NuWave have developed a large and valuable distribution system through their use of the EXP Marks, and the reputation and goodwill in that mark is of great value to NWB and NuWave.

87.     Defendants have used in commerce the EXP Mark without NuWave's consent or authorization as shown on the emails of the Defendants. Defendant Donn and the Vine Collective Defendants used Donn's connections inside NWB to access the files for the trademark, which all three Defendants used in commerce after Donn was terminated from NWB.

88.     Such use of the EXP Mark is likely to confuse consumers into believing that Defendants are associated with, endorsed by, or sponsored by NWB or NuWave, when they are not.

89.     Defendants' conduct constitutes false designation of origin, and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and common law.

## COUNT II: TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

90.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 89 hereof.

91.     NWB's subsidiary, NuWave, owns three federal registrations for the EXP Marks in connection with its services, namely, U.S. Reg. No. 90529275; 90363337; and 6338402, (the "Registrations").

92.     The Registrations serve as prima facie evidence of the validity of the registered mark and of NuWave's ownership of the EXP Marks and exclusive right to use the marks in commerce pursuant to 15 U.S.C. § 1115(a).

93.     Defendants have used the registered marks in connection with the sale, offering for sale, distribution, and advertising of kava and kratom in a manner likely to cause confusion, or to cause mistake, or to deceive.

94.     Defendants' conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

95.     Defendants' willful and intentional actions have caused, and unless restrained by this Court, will continue to cause irreparable harm and injury to NWB and NuWave.

96.     NWB and NuWave have no adequate remedy at law.

## COUNT III:
## TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

97.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 96 hereof.

98.     The EXP Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

99.     Defendants' actions and conduct, as set forth herein, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

100.    NuWave is entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

101.    As a direct and proximate result of Defendants' wrongful conduct, NuWave has suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

102.    Pursuant to 15 U.S.C. § 1117, NuWave is entitled to recover damages from Defendants caused by their unlawful use of the EXP Marks, in an amount to be determined at trial.

## COUNT IV:
## TEXAS UNIFORM TRADE SECRETS ACT
## TEX. CIV. PRAC. & REM. CODE §§ 134A.002

103.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 102 hereof.

DocuSign Envelope ID: 40D77795-301A-452F-89C3-D5E7A82B8FD6

104.    Defendant Donn, Vine & CO, LLC and Vine&Co, LLC have also violated the Texas Uniform Trade Secrets Act by taking and using NWB's confidential customer information without NWB's authorization to solicit away NWB's customers.

105.    NWB took all reasonable efforts to keep its customer information secret.

106.    The customer list has actual or potential economic value to third parties because it is generally not known to the public, and is not readily ascertainable through proper means, and because it contains the names and contact information for people who will purchase the products that the Defendants are attempting to sell, relieving them of the need to grow their own businesses through advertising, word of mouth, or otherwise, and giving them access to NWB's entire customer base.

107.    NWB kept its customer information on servers that were not accessible by anyone without a proper access code. No one outside of NWB has such an access code.

108.    The confidential customer information is also valuable to the Defendants in that it will allow them to continue siphoning off sales from the Plaintiffs, and to continue to harm the reputation of the Plaintiffs by giving NWB's customers slow and poor service under the guise of being partnered with NWB.

109.    Moreover, the information in the confidential customer list took NWB eight years to compile, which the Defendants are using to their advantage without any effort whatsoever.

110.    Since the Defendants began soliciting NWB's customers as so-called partners of NWB, at least ten customers have vowed to never use NWB's services again as a result of the poor handling of their orders, which they blame on NWB, even though the poor service was a result of Defendant Donn's slow theft of products to fulfill the orders for his so-defendant companies. Most of those customers are now clients of Defendants.

111.    NWB is entitled to injunctive relief against all three defendants under the TUTSA.

112.    NWB is also intitled to its actual damages under the TUTSA, as well as the value of the unjust enrichment the Defendants have gained through the misappropriation of the confidential information.

113.    NWB is also entitled to exemplary damages, pre and post judgment interest, and its reasonable and necessary attorney fees, as well as court costs.

## COUNT V:
## BREACH OF FIDUCIARY DUTY

114.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 113 hereof.

115.    Defendant Donn owed NWB a fiduciary duty during the time he was an employee of NWB as NWB's sales manager. As the sales manager for NWB, Donn was given complete access to all of the company's servers, systems and confidential information. Donn was allowed to create new systems using the confidential information he was given access to for the benefit of NWB.

116.    Donn breached his duty of loyalty and utmost good faith.

117.    Donn breached his duty to refrain from self-dealing by taking the profits from each secret sale he made using NWB's products and shipping department, and through all acts complained of above.

118.    Donn breached his duty of fair and honest dealings by the actions complained of above.

119.    Donn breached his duty of full disclosure.

120.    Because Donn entered into transactions with NWB's customers without the knowledge of, or any payments to NWB, there is a presumption of unfairness with regard to all the transactions Donn made in secret.

121.    Donn's actions proximately caused NWB to lose all the profits from sales of NWB's products he secretly initiated, for a loss of at least $940,659.66.

122.     Plaintiff seeks its economic damages, reasonable and necessary attorney's fees, and court costs, and is entitled to exemplary damages for Donn's breach of his fiduciary duty to NWB.

123.     Plaintiff is also entitled to injunctive relief in the form of profit disgorgement, receivership, and a constructive trust over the proceeds Donn obtained as a result of his breach.

**COUNT VI:**
**TEXAS THEFT LIABILITY ACT**

124.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 123 hereof.

125.     NWB had a right to the property in its warehouse that was taken by Donn and sold by his co-defendant entities, without NWB's knowledge or consent. Likewise, NWB also had a right to its own services in its shipping department, that all three Defendants used for their personal gains, without the knowledge or consent of NWB. Furthermore, NWB had a right to the profits from the sale of the products these three defendants together in conspiracy and concert with one another sold in the amount of at least $940,659.66.

126.     Donn took those properties and services of NWB for his own personal gain, and for the gain of Vine&CO, LLC and Vine & Co, LLC.

127.     Donn also wrote checks for small amounts to NWB personally, less than the value of the products, to initiate shipments of those products to his two co-defendant entities, whose value was two, ten and sometimes a hundred times more than the value of the check he wrote.

128.     Donn also occasionally used NWB's credit card to initiate these transactions, paying nothing at all for products to be shipped under the Vine Collective brand.

129.     These Defendants in conspiracy with one another intentionally deprived NWB of the profits and property he stole because he thought no one would ever notice the transactions.

130.     Plaintiff NWB has been damaged in the amount pled of at least $940,659.66.

131.    Plaintiff NWB seeks its economic damages, the TLA additional damages, exemplary damages, pre- and post-judgment interest, court costs, and its reasonable and necessary attorney fees.

## COUNT VII:
## UNFAIR COMPETITION

132.    Plaintiffs realleges and incorporates by reference Paragraphs 1 through 131 hereof.

133.    Defendants have engaged and will continue to engage in illegally using and displaying the EXP Marks in violation of the Lanham Act in their communications to NuWave and NWB's customers.

134.    Defendants also improperly used, and will continue to use, NWB' confidential information in furtherance of the operation of Defendants, built on the back of NWB, which compete directly with NWB, by directly soliciting NWB's customers who were previously only known by NWB.

135.    Defendants have, and will continue to, unfairly profit from using the EXP Marks and NWB good will and proprietary information to confuse, mislead, and/or deceive current and prospective NWB customers into obtaining goods and services from his Vine Collective Defendants because they still set themselves out to be partnered with NuWave and NWB.

136.    Through their actions, Defendants are intentionally attempting to deceive NuWave and NWB's current and prospective customers for Defendants' business gain.

137.    As a direct and proximate result of Defendants' actions, NWB and NuWave have suffered and continues to suffer irreparably injury and is entitled to monetary damages in an amount to be determined at trial.

## COUNT VIII:
## VIOLATION OF TEXAS'S
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

138.    Plaintiffs realleges and incorporates by reference Paragraphs 1 through 137 hereof.

139.     Defendants are using the NWB Marks to identify the services they provide as those of a NWB partner. However, Defendants are actually providing the services themselves.

140.     Defendants' use of the EXP Marks has caused confusion, caused mistake, and/or deceived as to their affiliation, connection, or association with NWB or NuWave, or as to the origin, sponsorship, or approval of their goods, services, or commercial activities, and is likely to do so into the future.

141.     Defendants have and will continue to use the EXP Marks, NWB goodwill, and confidential information to lure customers who believe that he or she is obtaining services from a partner or shareholder of NWB.

142.     The unlawful conduct of Defendants described herein constitutes unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Texas Statute 501.204(1).

143.     As a direct and proximate result of Defendants' wrongful conduct, NWB and NuWave have suffered damages to the value of the EXP Marks and to NWB's customer goodwill and have also not received monies owed to them.

144.     Defendants' acts have been and are being done knowingly and intentionally to cause confusion, to cause mistake, and/or to deceive.

145.     As a result, NWB and NuWave have suffered and continue to suffer irreparable injury and have incurred and continues to incur monetary damages in an amount to be determined at trial.

**COUNT IX:**
**UNJUST ENRICHMENT**

146.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 145 hereof.

147.     Defendants have knowingly and intentionally misappropriated funds in furtherance of their operation of the Vine Collective Distributor <u>from inside NWB's Sales Offices</u>.

DocuSign Envelope ID: 40D77795-301A-452E-89C3-D5E7A82B8ED6

148.    Defendants have used and will continue to use the proprietary and trade secret information of NWB, and will continue to display the EXP Marks (or marks similar thereto) in order to confuse, mislead, and/or deceive others in violation of the Lanham Act.

149.    Defendant Donn used his position within NWB to gain the trust of NWB's customers, and to lie to them about his status as a shareholder of NWB and NWB's so-called partnership with Vine Collective. Defendant Donn was aware these statements were made to confuse customers into paying himself, Vine&CO, LLC, and Vine & CO, LLC instead of NWB. All three Defendants took payments for their own use from NWB's customers who unknowingly made payments to bank accounts outside of NWB's control. NWB expects to be compensated, and Defendants should compensate NWB for the funds they stole or misdirected or misappropriated.

150.    Defendants knowingly retained these benefits in an amount equal to or more than $940,659.66, to which they are not rightfully entitled, at the expense and to the damage of NWB.

151.    There is no adequate remedy at law that will protect NWB from continued irreparable injury or fully compensate it for the damage caused by Defendants' wrongful conduct.

## PRAYER

WHEREFORE, Plaintiff requests judgment with each item of this prayer being for relief additional to, and alternative to each other item and not an election of remedies, as follows:

A. The entry of a preliminary and permanent injunction prohibiting Defendant and his respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and companies, and all others in privity or acting in concern with them, from:

      i.      Using the NWB Marks and logos and any confusingly-similar marks;

DocuSign Envelope ID: 40D77795-301A-452F-89C3-D5E7A82B8FD6

     ii.    Otherwise suggesting that Defendant is affiliate of, partnered with, sponsored by, or endorsed by NWB in any manner;

     iii.    Using NWB's Confidential Customer List and Customer Information;

     iv.    Engaging in any other activity constituting unfair competition or trademark infringements;

     v.    Assisting, aiding, or abetting another person or business entity in engaging in or performing any of the activities enumerated above.

B.  The entry of a preliminary and permanent injunction ordering Defendant to return all Confidential Information to Plaintiff;

C.  The entry of a preliminary and permanent injunction of profit disgorgement Donn received as a result of his breach of fiduciary duties to NWB;

D.  Appointing a receiver over the business of Alec Donn which was created using the stolen profits from NWB as a result of his breach of fiduciary duty;

E.  Creating a constructive trust for the $940,659.66 in stolen profits;

F.  Awarding exemplary damages and additional damage pursuant to the statutes listed above;

G.  Awarding reasonable attorneys' fees and costs pursuant to the statutes listed above;

H.  Awarding interest as allowed by law.

I.  Awarding such other and further relief as the Court deems just and proper.

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Plaintiff will be represented at trial by Adam Allen.

Dated: May 31, 2024

Respectfully submitted,


ALLEN & ASSOCIATES

By: /s/ Adam Allen

      Adam Allen
      Texas Bar No. 24031124
      Email: adam@aallenlaw.com
      2777 Allen Parkway, Suite 1000
      HOUSTON, TX 77019
      Tel. (832) 871-5920
      Fax. (281) 503-7671
      Attorneys for NWB Distribution, L.P.

**VERIFICATION**

I, Christopher Jepson, being duly sworn, deposes and says:

I am Chief Executive Officer of Plaintiff NWB Distribution, LP and Manager of NuWave Botanicals, LLC. I have read the foregoing First Amended Verified Complaint and know the contents thereof and state that the allegations are all true and correct. I base this Verification on my own personal knowledge because I personally hired and worked with Alec Donn, and I personally handled the investigations mentioned in the Verified Complaint. The grounds of my knowledge, information, and belief, are derived from my position as Chief Executive Officer, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Plaintiff's records and conversations with Plaintiff's employees, and my review of Plaintiff's files in support of a criminal investigation being conducted by the Financial Crimes Unit of the Houston Police Department, and my interviews with all of NWB's customers who were swindled by Alec Donn through his company Vine Collective which is the tradename of his Vine&Co, LLC and Vine & Co, LLC companies. I also make this new verification to clarify and to correct the party names after being notified of the misnomers by the Defendants.


Dated: _5/31/2024_____

                              By:_____
                                   Christopher Jepson
                                   Chief Executive Officer
                                   NWB Distribution L.P. and
                                    Manager, NuWave Botanicals, LLC

DocuSign Envelope ID: 40D77795-301A-452E-89C3-D5E7A82B8ED6

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of the foregoing was served on all counsel for the Defendants through the Court's ECF system as shown below:

**FISHERBROYLES, LLP**

Trent D. Stephens
State Bar No. 24008081
SDTX Bar No. 25030
2925 Richmond Ave., Ste. 1200
Houston, Texas 77098
(713) 425-3730
Email: trent.stephens@fisherbroyles.com

By:___*/s/Adam Allen*_____
      Adam Allen